IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| WILLIAM LAWSON and CAROL LAWSON,<br><br>      Plaintiffs,<br><br>vs.<br><br>ASSOCIATION OF APARTMENT OWNERS OF WAILEA POINT VILLAGE, a Hawaii nonprofit corporation; MATT CHIEREK, in his capacity as the Property Manager for the Association of Apartment Owners of Wailea Point Village; and PETER LIGE, in his capacity as a member of the Board of Directors of the Association of Apartment Owners of Wailea Point Village,<br><br>      Defendants. | CIVIL NO. 15-00449 DKW-KSC<br><br>**ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR FRCP 12(b)(1) DISMISSAL AND FOR JUDGMENT ON THE PLEADINGS; AND (2) DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**ORDER: (1) GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION FOR FRCP 12(b)(1) DISMISSAL AND
FOR JUDGMENT ON THE PLEADINGS; AND (2) DENYING
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

This case arises out of a dispute between Plaintiffs William and Carol

Lawson, the owners of two units in the Wailea Point Village ("Wailea Point")

condominium project, and Defendants Association of Apartment Owners of

Wailea Point Village ("AOAO"); Matt Chierek, the Property Manager for the

AOAO; and Peter Lige, a member of the AOAO's Board of Directors.  The

Lawsons contend that Defendants violated Hawaii Revised Statutes ("HRS")

§ 514B-140 and the governing condominium documents by: (1) conditionally

approving the Lawsons' renovation project subject to a certain indemnity

agreement and performance bond; and (2) denying the Lawsons' request for an

extension of time to complete the first phase of their renovation project.  Before the

Court is Defendants' Motion for [FRCP] 12(b)(1) Dismissal and for Judgment on

the Pleadings (Dkt. No. 69) and the Lawsons' Motion for Partial Summary

Judgment (Dkt. No. 66).  For the reasons that follow, the Court GRANTS in part

and DENIES in part Defendants' Motion and DENIES the Lawsons' Motion.

## BACKGROUND

I.    **Factual Background**

    A.    **Wailea Point and its Governing Documents**

Wailea Point is a luxury residential condominium located in Kihei, Maui.

Wailea Point is governed and maintained by the AOAO, through its Board of

Directors ("Board"), in accordance with its Declaration, Bylaws, and House Rules

(collectively the "Governing Documents").  Plfs.' Exh. 2.  Chierek is the Property

Manager for the AOAO.  Plfs.' Exh. C (Chierek Decl. ¶ 1).  Lige is a member of

2

the AOAO's Board, and Chair of the AOAO's Building Committee.  Plfs.' Exh. 31.

The Lawsons own two units at Wailea Point, Unit 601 and Unit 1404, which they purchased in 2005 and 2013, respectively.  Plfs.' Exh. A (Lawson Decl. ¶¶ 2, 4).  This case arises out of a dispute over renovations related to Unit 1404.

**B.     Wailea Point's Governing Documents**

The following is a brief overview of the relevant provisions of the Governing Documents.

**1.     Declaration**

The provisions of the Declaration apply to all Wailea Point unit owners. Section 7.G(2) of the Declaration permits the owner of any residential apartment "to install, alter and/or rearrange partitions and other improvements within his apartment," provided that the following three conditions are met:

> (i) any structural additions, alterations or improvements made within the apartment shall require the prior approval of the Board . . .;
>
> (ii) all construction activity necessary to any such alteration shall be completed within four (4) months of the commencement thereof, subject to delays beyond the control of the apartment owner or his contractors whether caused by strikes, the unavailability of construction materials or otherwise, in which case any such construction activity shall be completed in such additional time as may be reasonably necessary in the exercise of due diligence; and

(iii) the apartment owner shall deposit with the Association satisfactory evidence of a payment and performance bond guaranteeing the performance of such construction free and clear of all mechanics' and materialmen's liens . . . .

Plfs.' Exh.2 (Restatement of the Declaration of Wailea Point Village) at 14 (formatting altered).

Section 7.G(3) of the Declaration provides that "[i]f Board approval of any alteration or improvements provided for by subsection[] . . . 7.G(2) . . . shall be deemed necessary by the terms of any applicable law, such approval shall not be unreasonably withheld." *Id.* at 15.  HRS Chapter 514B, in turn, provides that no unit owner may make an addition or alteration without the approval of the Board, "which shall not unreasonably withhold the approval."  HRS § 514B-140(c).

In the event that an apartment owner undertakes a modification of his or her apartment, Section 19 of the Declaration provides that "each and every apartment owner shall indemnify and hold harmless . . . the Association against any and all claims that materials or workmanship of the property which are affected by such modification are defective."  Plfs.' Exh. 2 at 22-23.

## 2. **Bylaws**

The Bylaws vest the AOAO with the authority to create rules and regulations governing construction activities at Wailea Point.  *See* Defs.' Exh. A, Exh. 3 ("Bylaws") at 25-26 (authorizing the Board to adopt and amend the "Rules

and Regulations covering the details of the operation and use of the Property").

The Bylaws provide the following parameters for the alteration of units:

> Unless otherwise prohibited by the provisions of the Declaration or these Bylaws, an Apartment owner may make additions, alterations or improvements within his apartment at his sole cost and expense; provided that any structural additions or improvements made within the apartment shall require prior approval of the Board, in which case the Board shall notify all other Owners within the same building at least thirty (30) days prior to approval.
>
> . . . . The Board, in its discretion, and as a condition to approval, may require an apartment owner desiring to make alterations or modifications to post a bond protecting the Association from liability arising as a result of any such alterations or modifications.

*Id.*

The Bylaws also contain provisions stating that apartment owners are bound by the rules and regulations, and that no waiver provision applies. *See id.* at 42, 46 ("No restriction, condition, obligation or provision in these Bylaws shall be deemed abrogated or waived by reason of any failure to enforce the same, irrespective of the number of violations or breaches thereof which may occur.").

### 3.    **Wailea Point Village House Rules**

The Wailea Point Village House Rules ("House Rules") apply to everyone on the property, but "[t]hey do not replace the Declaration and By-Laws." Defs.' Exh. D (Wailea Point Village House Rules) at 2. "In case of conflict, the Declaration and By-Laws supersede the House Rules." *Id.* House Rule M-1 limits

when major construction can occur, and the parties refer to that time period as the

"Construction Period":

> M-1   Major remodel/renovation construction is permitted only from
> April 1 through October 31 [the "Construction Period"].

House Rules M-2 and M-3 further provide:

> M-2   All remodel/renovation plans must be approved by the Wailea
> Point Board of Directors and the Board's Building and Site
> Committee before construction begins.  By no later than March
> 1, Owners who plan to remodel/renovate that year must submit
> an Application for Redecorating or Remodeling Form for
> approval, which may take from thirty (30) to sixty (60) days.
>
> M-3   After Board approval, Owners must promptly execute all repair,
> maintenance, redecorating, alteration and/or remodel renovation
> work.

*Id.* at 10 (formatting altered).

## C.   The Lawsons' Renovation Project

In November 2014, the Lawsons contacted the AOAO about renovating Unit

1404 and requested the forms necessary for obtaining approval of their project.

Plfs.' Exh. 5.  In response, the AOAO sent the Lawsons the following documents:

(1) the Wailea Point Contractor and Vendor House Rules, dated September 17,

2013; (2) the Wailea Point Village AOAO Application for Redecorating or

Remodeling and Wailea Point Village AOAO Redecorating/Remodeling

Procedures (Revised 11/12); and (3) the Wailea Point Village AOAO Application

for Redecorating or Remodeling Effective September 2013.  *Id.*

The Lawsons planned to renovate Unit 1404 in two phases because of the time limitations presented by the Construction Period.  Lawson Decl. ¶ 11.  The first phase would occur from April through October 2015, the completion of which would result in a habitable apartment; and the second phase would occur from April through October 2016.  *Id.*  On February 13, 2015, the Lawsons submitted to the AOAO their Wailea Point Village AOAO Application for Redecorating or Remodeling ("Application").  Plfs.' Exh. 6.

In March 2015, the Lawsons inquired about the status of their Application with Chierek and Lige.  Plfs.' Exh 8.  The Lawsons were informed that the Bergeman Project Group ("BPG"), a structural engineering firm, would review the plans for the Lawsons' proposed renovation.  Plfs.' Exhs. 8, 9.  On March 25, 2015, the Lawsons received BPG's report and the Wailea Point Tiered Construction and Remodeling Approval Program ("the Tiered Program") from the AOAO.  Plfs.' Exh. 10.  The Tiered Program classified construction projects based on their complexity and impact on the neighboring community on a 1-5 scale, with a Tier 1 project being the simplest and a Tier 5 project being the most complex.[1] Defs.' Exh. 6; Chierek Decl. ¶ 7.  The report identified the Lawsons' proposal as a "Tier 4 Project."  Defs.' Exh. L.  The Board formally adopted the Tiered Program

---

[1]Defendants point out that Mrs. Lawson was a member of the Board at the time the Lawsons requested to start the process for their renovation project, and that she participated in the development and adoption of the Tiered Program.  *See* Defs.' Exhs. E, F.

on May 19, 2015, and subsequently disclosed the Tiered Program to the Wailea Point owners on June 5, 2015.  Plfs.' Exh. 26, 27.[2]

On March 27, 2015, Chierek notified the Lawsons by email that the "building committee has approved the demo and start of your project next week on April 1," and that it was "looking forward to providing the final complete approval of the project once the structural modification items have been satisfied and further reviewed."  Plfs.' Exh. 11.  A few days later, on March 31, 2015, David Hernandez of BPG confirmed by email that "the issues noted in our plan review can all be resolved," and offered "no objection" to commencing "demolition work to expose existing structure[.]"  Plfs. Exh. 12.  Hernandez continued, however, that "BPG is not the party to issue an official project approval."  *Id.*

On April 1, 2015, the Lawsons' demolition work began.  Plfs.' Exh. B (Conners Decl. ¶ 12).  By the week of April 20, 2015, demolition of the non-structural elements had been completed.  However, the AOAO had not given its approval for the remaining work.  Accordingly, on April 27, 2015, the Lawsons emailed Chierek to ask for the AOAO's final approval, and followed up the next day with Lige and Jeremy Mario, the President of the AOAO.  Plfs.' Exhs. 14-15.

---

[2]According to the Lawsons, the Tiered Program disclosed to all homeowners on June 5, 2015 differed from the Tiered Program provided to the Lawsons on March 25, 2015.  Namely, the June 5 version contained language requiring unit owners with Tier 4 projects to sign a certain Modification/Indemnity Agreement, whereas the March 25 version did not.  *Compare* Plfs.' Exh. 10 *with* Exh. 27.

On April 28, 2015, Lige responded that "[b]efore the Board can approve [the renovations] the contractor must furnish construction performance and payment bonds and you must sign the Modification/Indemnity Agreement." Plfs.' Exh. 16. In a subsequent email, Lige acknowledged that "this year the Board adopted the Modification/Indemnity Agreement which owners must sign if they plan to make structural changes to their unit." Plfs.' Exh. 17.

On April 30, 2015, the Lawsons responded to Lige's emails, asserting that the bond and indemnity requirements "should have been brought forth in the application process. I now have a unit that is demoed, worth basically nothing, an OK to proceed from the WP engineer, and I now need the Board approval to proceed. We also may need to extend our building window." Plfs.' Exh. 17 at 2-3.

On May 7, 2015, Chierek sent the Lawsons a letter "to confirm that final board approval of your project will be granted subject to your complete compliance with [three] requirements": (1) close involvement and follow up with the peer review comments set forth by the Bergeman Project Group; (2) a fully executed Modification/Indemnity Agreement, in the form attached to the letter; and (3) a performance bond covering the common element structural items of the project. Plfs.' Exh. 18 at 9. The letter explained that the attached Modification/ Indemnity Agreement, once executed: "will be recorded with the Land Court and will bind you and any/all future owners of the unit." *Id.* This was the first time

that the Lawsons were provided the Modification/Indemnity Agreement form. *See* Lawson Decl. ¶ 7. Defendants subsequently withdrew their demand for an indemnity agreement, and instead, agreed with the Lawsons that the previously executed Application, which included certain indemnification language, sufficed. Lawson Decl. ¶ 30; Chierek Decl. ¶ 13; Plfs.' Exhs. 30, 6.

On May 22, 2015, Shawn Conners, the Lawsons' general contractor, obtained a performance bond for the renovations to Unit 1404. Plfs.' Exh. 19. Approximately one week later, Defendants approved the renovation project, thereby allowing Conners to resume work on Unit 1404. Conners Decl. ¶ 16; Plfs.' Exh. 20. However, the renovation work did not immediately resume because of the need to remobilize construction workers and equipment. Conners Decl. ¶ 17; Lawson Decl. ¶ 32. Conners was unable to finish Phase I of the renovations by October 31, 2015 as originally scheduled, and Unit 1404 was not habitable by that date. Conners Decl. ¶¶ 19, 22.

On September 8, 2015, the Lawsons requested an extension of time to complete Phase I renovations of Unit 1404. Plfs.' Exh. 21. On September 17, 2015, the AOAO Board denied the Lawsons' request:

> Your extension request past October 31st was not approved by the board on Tuesday. The proposed working during the extension period from Nov. 1 to Dec. 15 represents a major project of significant scope. The tier construction document clearly states that "Major projects of any kind are not permissible between Nov. 1 and Mar. 30 with the exception of

> projects dictated by an emergency situation which pose a threat to life, health, or significant property damage unless immediately corrected."

Plfs.' Exhs. 23.

Phase I of the Unit 1404 renovations was not complete as of the end of the 2015 Construction Period, and the unit remained uninhabitable until sometime after the 2016 Construction Period began on April 1, 2016. The Lawsons have substantially completed their renovation project within the 2015 and 2016 Construction Periods, but certain outstanding items remain for 2017. Chierek Decl. ¶ 16; Beaman Decl. ¶ 16.

## II.   **Procedural Background**

On October 27, 2015, after Defendants refused to grant the Lawsons an extension for Phase I work that continued beyond the 2015 Construction Period, the Lawsons filed a Complaint alleging the following claims: (1) injunctive relief against the AOAO (Count I); (2) declaratory relief (Count II), (3) negligence and negligence per se against the AOAO (Count III); (4) negligence and negligence per se against Chierek and Lige (Count IV); (5) intentional and willful violation of HRS § 514B-140 against Chierek and Lige (Count V); and (6) promissory estoppel against the AOAO, Chierek, and Lige (Count VI). Dkt. No. 1. The following day, the Lawsons filed a motion for temporary restraining order ("TRO Motion"), and a motion for preliminary injunction. Dkt. Nos. 7, 8. On October 30, 2015, the Court

denied the Lawson's TRO Motion.  Dkt. No. 15; *see also* Dkt. No. 18.  Thereafter,

on November 19, 2015, the Lawsons withdrew their motion for a preliminary

injunction without prejudice.  Dkt. No. 25.

On September 28, 2016, Defendants filed a Motion for [FRCP] 12(b)(1)

Dismissal and for Judgment on the Pleadings (Dkt. No. 69), and the Lawsons filed

a Motion for Partial Summary Judgment (Dkt. No. 66).  Defendants' motion seeks

dismissal of all claims, while the Lawsons request a judgment in their favor with

respect to Counts V and VI:

> (1) that Defendants have violated the condominium project
> documents and Hawaii Revised Statutes Chap. 514B by
> unreasonably withholding their consent to the Lawsons'
> renovations; (2) that Defendants were estopped from
> withholding such consent and breaking their March 27, 2015
> promise to the Lawsons; and (3) that Defendants are liable to
> the Lawsons for damages in amounts to be proved at trial.

Dkt. No. 66 at 2.

On November 22, 2016, the Court heard oral argument on both motions.  At

the hearing, the Court ordered the parties to a settlement conference before the

Magistrate Judge and held the pending motions in abeyance.  Dkt. Nos. 96, 98.

The parties appeared for a settlement conference before the Magistrate Judge on

December 6, 2016, but no settlement was reached.  Dkt. No. 100.

## STANDARD OF REVIEW

### I.    Rule 12(b)(1)

Rule 12(b)(1) authorizes a district court to dismiss an action for lack of subject matter jurisdiction. "[T]he party asserting subject matter jurisdiction has the burden of proving its existence." *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009). As part of its jurisdictional evaluation, the Court may consider evidence outside the pleadings and should not presume that the allegations of the complaint are true. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

## II.   Rule 12(c)

Federal Rule of Civil Procedure 12(c) permits parties to move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, 'a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'" *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Brooks v. Dunlop Mfg. Inc.*, No. 10-04341 CRB, 2011 WL 6140912, at *3 (N.D. Cal. Dec. 9, 2011)).

For a Rule 12(c) motion, the allegations of the nonmoving party are accepted as true, while the contradicting allegations of the moving party are assumed to be false. *See MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081 (9th Cir. 2006). "The Court inquires whether the complaint at issue contains 'sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its

face.'" *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Therefore, "'[a] judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law.'" *Marshall Naify Revocable Trust v. United States*, 672 F.3d 620, 623 (9th Cir. 2012) (quoting *Fajardo v. Cnty. of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999)).

## III.   Rule 56

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case.  A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.  *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).  Thus, the moving party has the burden of persuading the court as to the absence of a genuine issue of material fact.  *Celotex*

14

*Corp v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must set forth "'significant probative evidence'" in support of its position. *T.W. Elec. Serv.*, 809 F.2d at 630 (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion," and can do so by either "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

## DISCUSSION

### I.  Defendants' Motion for Judgment on the Pleadings

#### A.  Count I (Injunctive Relief)

Count I alleges that "[t]he Lawsons are entitled to preliminary and permanent injunctive relief to permit the renovations to Unit 1404 to be completed." Compl. ¶ 118. Defendants assert that Count I "must be dismissed as moot" because the Lawsons' renovations will be complete by November 1, 2016, and the AOAO has already approved the work that will occur during the 2016 Construction Period. Dkt. No. 69-1 at 15. The Lawsons dispute that Count I is moot, maintaining that their "renovations are not yet complete." Dkt. No. 84 at 27.

The parties do not dispute that an action or claim becomes moot if "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979) (citations omitted); *see also Wong v. Hawaii Medical Center-West-LLC*, No. CIV. 09-00279 JMS/LEK, 2009 WL 3294794, at *6 (D. Haw. Oct. 14, 2009). Nonetheless, "[t]he burden of demonstrating mootness 'is a heavy one.'" *Davis*, 440 U.S. at 631 (citation omitted).

Here, the parties agree that while close, the renovations are not yet complete and will not be complete until sometime in the next construction cycle that begins in April 2017. Because Count I seeks to enjoin the AOAO from withholding approval and permission until the renovations to Unit 1404 are complete, and certain items remain outstanding, Count I is not moot. *See* Chierek Decl. ¶ 16; Beaman Decl. ¶ 16. Accordingly, the Court DENIES Defendants' motion to dismiss Count I.

### B.   <u>Count II (Declaratory Relief)</u>

Count II alleges that "[l]imiting remodeling and renovations of individual units to the Construction Period is unreasonable, both in general and as applied to the Lawsons." Compl. ¶ 120. As such, the Complaint alleges that the Lawsons are "entitled to declaratory relief determining that Section M-1 of the House Rules is

void and/or voidable and/or unenforceable on the basis that it is contrary to HRS § 514B-140 and the Declaration." *Id.* ¶ 122.

Notwithstanding these allegations in the Complaint, Plaintiffs' counsel clarified at the November 22, 2016 hearing that the Lawsons no longer contest the validity of Section M-1 of the House Rules or the power of the AOAO to enact it. *See* Dkt. No. 102 at 3-4.  Rather, as the Court confirmed, the gravamen of the dispute is whether the AOAO unreasonably withheld approval of the Lawsons' renovation project.  *Id.*  Given this clarification, the Court finds that Count II is moot because there is no longer a live controversy surrounding this issue.  *See Davis*, 440 U.S. at 631.  Accordingly, the Court GRANTS the AOAO's motion to dismiss Count II.

### C.    Count III (Negligence and Negligence Per Se Against the AOAO) & Count IV (Negligence and Negligence Per Se Against Chierek and Lige)

Counts III and IV allege that the AOAO, Chierek, and Lige negligently enforced the Construction Period, in violation of the Declaration and HRS § 514B-140.  Compl. ¶¶ 124-25, 130-31.  Defendants contend that these claims fail as a matter of law because: (1) as HRS Chapter 414D non-profit corporation participants, neither the AOAO nor Lige can be held liable for negligence; and (2) all three defendants are protected by the business judgment rule.  Each argument is addressed in turn.

First, the Court agrees with the AOAO that, as pled, neither the AOAO nor Lige can be held liable for negligence because they are non-profit corporation participants governed by HRS Chapter 414D.  HRS § 514B-106, relating to condominium boards, provides in relevant part:

> Except as provided in the declaration, the bylaws, subsection (b), or other provisions of this chapter, the board may act in all instances on behalf of the association.  In the performance of their duties, officers and members of the board shall owe the association a fiduciary duty and exercise the degree of care and loyalty *required of an officer or director of a corporation organized under chapter 414D.*

HRS § 514B-106(a) (emphasis added).

Chapter 414D, Hawaii's Nonprofit Corporations Act, in turn, limits the liability of a director of a corporation in the following manner:

> *Any person who serves as a director to the corporation without remuneration or expectation of remuneration shall not be liable* for damage, injury, or loss caused by or resulting from the person's performance of, or failure to perform duties of, the position to which the person was elected or appointed, *unless the person was grossly negligent in the performance of, or failure to perform, such duties.*

HRS § 414D-149(f) (emphases added).  HRS § 414D-149(f), in other words, limits the liability of the AOAO and Lige by excluding recovery based on a theory of

18

negligence.[3]  Accordingly, Count III is dismissed as against the AOAO, and Count IV is dismissed as against Lige.[4]

Second, the Court disagrees with the AOAO that the business judgment rule would independently shield Defendants from liability arising from the allegations in Counts III and IV at this stage of the proceedings.

Under Hawaii law, the business judgment rule protects decisions by corporate directors and officers that are: (1) made in good faith; (2) with the care that an ordinarily prudent person in a like position would exercise under similar circumstances; and (3) in a manner believed to be in the entity's best interest.  *See Fujimoto v. Au*, 95 Hawai'i 116, 149, 19 P.3d 699, 732 (2001).  Put another way, a person who challenges a decision must prove that the corporate director or officer: (1) failed to act in good faith; (2) failed to act in a manner he or she reasonably believed to be in the best interest of the corporation; or (3) failed to exercise such care as an ordinarily prudent person in a like position would use in similar circumstances.  *See Lussier v. Mau–Van Development, Inc.*, 4 Haw. App. 359, 376, P.2d 804, 817 (Haw. App. 1983).  Defendants argue, and the Court agrees, that "the board obligations in the association context are analogous to that in the

---

[3]Defendant Chierek cannot rely on HRS § 414D-149(f) because he is a paid employee, not a member, of the AOAO.

[4]Because amendment may be possible, such as if facts evidencing gross negligence are present, the dismissal is without prejudice.  However, the Court expresses no opinion as to whether a motion for leave to amend the complaint under Fed. R. Civ. P. 15(a)(2) should be granted.

corporate context." Dkt. No. 69-1 at 26 (citing *Taniguchi v. Ass'n of Apartment Owners of King Manor, Inc.* 114 Hawai'i 37, 50, 155 P.3d 1138, 1151 (2007) ("Inasmuch as a condominium's board of directors is similar to a corporation's board of directors, a condominium board member is also an agent for his condominium principal (*i.e.*, the membership of the association).").

The Lawsons argue that Defendants' decisions "were clearly arbitrary and unreasonable and are therefore not protected by the business judgment rule." Dkt. No. 84 at 20. As support, the Lawsons point to the following two occasions: first, when Defendants halted the Lawsons' renovations for weeks in Spring 2015 after authorizing them to start work; and second, when Defendants refused to grant the Lawsons an extension of time past the 2015 Construction Period, despite the delay being allegedly beyond their control. Dkt. No. 84 at 20 (citing Compl. ¶¶ 60-82, 91-100, 110-11). The Court finds that the allegations in the Complaint raise questions about whether the business judgment rule would, as a matter of law, protect Defendants from liability. The Complaint specifically alleges that the AOAO mishandled the construction approval process by, among other things: failing to provide all of the appropriate instructions and forms to the Lawsons at the outset; changing the procedures, forms, and requirements during the approval process; utilizing requirements that had not been adopted by the Board; and failing to act in a timely fashion. Compl. ¶ 86. At minimum, the Complaint alleges that

Defendants failed to exercise such care as an ordinarily prudent person in a like position would use in similar circumstances.  *See Lussier*, 4 Haw. App. at 376, 667 P.2d at 817.  As such, the business judgment rule cannot serve as the basis of extracting Defendants from the Lawsons' negligence claims, at least on the pleadings.[5]

In sum, Defendants' motion on Counts III and IV is GRANTED as to the AOAO and Lige, but DENIED as to Chierek.

**D.   Count V (Intentional and Willful Violation of HRS § 514B-140 Against Chierek and Lige)**

Count V alleges intentional and willful violation of HRS § 514B-140 against Chierek and Lige.  The statute relates to condominiums and provides in relevant part: "additions to or alterations of a unit . . . shall require approval only by the board, which shall not unreasonably withhold the approval[.]"  HRS § 514B-140(c).

In seeking judgment on Count V, Defendants argue only that the Lawsons fail to meet the particularity requirements for alleging fraud under Fed. R. Civ. P. 9(b).  Dkt. No. 69-1 at 30.  In response, the Lawsons argue, and the Court agrees,

---

[5]It is unclear whether Chierek, the AOAO's property manager, played any decision-making role in the mishandlings alleged by the Lawsons.  However, the Complaint groups Chierek in with Lige and the Board generally, which the Court must give credence to on a Rule 12(c) motion.

21

that "fraud is not alleged in the Complaint." Dkt. No. 84 at 24.[6]  Accordingly, the

Court DENIES Defendants' motion as to Count V.

**E.      Count VI (Promissory Estoppel Against the AOAO, Chierek, and Lige)**

Defendants contend that the Court should dismiss the Lawsons' claim for

promissory estoppel because Defendants' alleged promises were subsumed by the

Governing Documents.  In other words, Defendants claim that the equitable

remedy of promissory estoppel is not available because the Lawsons have a

remedy at law.

The parties agree that "when an express contract exists between the parties

concerning the same subject matter, equitable remedies are not available." *Shatata*

*v. Steak Waikiki, LLC,* 721 F. Supp. 2d 968, 981 (D. Haw. 2010).  Here, the

Lawsons' promissory estoppel claim asserts, in relevant part:

> 141.  The AOAO, through the official actions of Chierek and Lige, granted the Lawsons approval for the renovations on March 27, 2015, subject only to the approval of Bergeman as to the proposed structural modifications, which the Lawsons later obtained.

> 142.  The Lawsons went ahead with the demolition, in reliance on the AOAO's approval, and paid their contractor significant amounts for such work.

---

[6]In its reply brief, Defendants argue that "[t]here is no cause of action under Hawaii law for violation of HRS § 514B-140 against a manager or a single individual board member."  Dkt. No. 93 at 14.  While Defendants may be correct, the Court will not consider arguments raised for the first time on reply.  *See* Local Rule 7.4 ("A reply must respond only to arguments raised in the opposition.  Any argument raised for the first time in the reply shall be disregarded.").

143.   The AOAO then unreasonably delayed their approval of the remaining renovations to Unit 1404, adding to the Lawsons' costs.

144.   The AOAO, through the official actions of Chierek and Lige, granted the Lawsons a conditional approval on May 7, 2015, which conditions were later satisfied by the Lawsons (or withdrawn by the AOAO).

145.   The AOAO continued unreasonably to delay their final approval of the remaining renovations to Unit 1404, delaying the work for six weeks and adding to the Lawsons' costs.

146.   The AOAO, through the official actions of Chierek and Lige, did not grant final approval of the Lawsons' proposed construction until May 27, 2015 – two months after the start of the Construction Period.

147.   As a result, the Lawsons suffered a six-week to two-month construction delay.

Compl. ¶¶ 141-47.

The Court agrees with Defendants that the Governing Documents are contractual obligations that concern the same subject matter as the Lawsons' promissory estoppel claim.  The crux of the Lawsons' promissory estoppel claim is that Defendants unreasonably delayed approval of the renovations to Unit 1404. Section 7.G(3) of the Declaration, to which the AOAO and the Lawsons are contractually bound, provides that "[i]f Board approval of any alteration or improvements provided for by subsection[] . . . 7.G(2) . . . shall be deemed necessary by the terms of any applicable law, such approval *shall not be*

*unreasonably withheld.*"  Plfs.' Exh. 2 at 15 (emphasis added).  HRS Chapter 514B similarly provides that no unit owner may make an addition or alteration without the approval of the Board, "which shall not unreasonably withhold the approval." HRS § 514B-140(c).

Given the terms included in the Declaration, the Lawsons have a remedy at law against the AOAO in the form of a breach of contract claim.  As such, their equitable claim is not available.  *See Shatata*, 721 F. Supp. 2d at 981.[7]  The Lawsons, however, do not have an "express contract" with Chierek and Lige. Accordingly, the Lawsons' promissory estoppel claim against these two individual defendants may proceed.[8]

## II.   **The Lawsons' Motion for Partial Summary Judgment**

The Court next turns to the Lawsons' Motion for Partial Summary Judgment.

### A.   **Count V (Intentional and Willful Violation of HRS § 514B-140 Against Chierek and Lige)**

Count V, as previously discussed, alleges the intentional and willful violation of HRS § 514B-140 by Chierek and Lige.  Compl. ¶¶ 134-136.  The Lawsons argue that by (1) demanding the Lawsons to execute the

---

[7]Once again, the Court expresses no view on whether a Rule 15 motion should be granted, allowing the addition of a breach of contract claim.
[8]At the hearing, the parties disagreed over whether Chierek and Lige, as agents of the AOAO acting in their official capacity, were shielded from liability.  The Court noted at the hearing that the parties had not sufficiently briefed the agency issue, and thus, the Court refrains from addressing it in the instant order.

Modification/Indemnity Agreement and to obtain a performance bond, and (2)

denying their extension of the 2015 Construction Period, Chierek and Lige

"unreasonably with[held] the approval" of the Lawsons' renovations in violation of

HRS § 514B-140(c).  In response, Defendants point out that the Lawsons'

arguments relate to actions taken by the AOAO, not Chierek or Lige, and that the

AOAO has broad authority under HRS Chapter 514B and the Governing

Documents to take actions deemed necessary to protect the ownership of Wailea

Point and to adopt the Construction Period.  As such, the AOAO argues that "its

actions in approving the Renovation Project and enforcing the Construction Period

were completely reasonable."  Dkt. No. 85 at 28.

As set forth below, there are genuine issues of material fact as to whether

Lige and Chierek's actions were reasonable.  Thus, the Lawsons' motion for partial

summary judgment as to Count V is DENIED.

### 1.    <u>Legal Framework</u>

The parties do not dispute that Chapter 514B, relating to condominiums,

applies.  HRS § 514B-140 provides in relevant part:

> Subject to the provisions of the declaration, nonmaterial
> additions to or alterations of the common elements or units,
> including, without limitation, additions to or alterations of a
> unit made within the unit or within a limited common element
> appurtenant to and for the exclusive use of the unit, shall
> require approval only by the board, which *shall not
> unreasonably withhold the approval*, and such percentage,
> number, or group of unit owners as may be required by the

> declaration or bylaws; provided that the installation of solar
> energy devices shall be allowed on single-family residential
> dwellings or townhouses pursuant to the provisions in section
> 196-7.

HRS § 514B-140(c) (emphasis added).

Relatedly, Section 7.G(3) of the Declaration provides that "[i]f Board

approval of any alteration or improvements provided for by subsection[] . . . 7.G(2)

. . . shall be deemed necessary by the terms of any applicable law, such approval

shall not be unreasonably withheld." Plfs.' Exh. 2 at 15. Thus, the plain language

of the statute and the Declaration dictate a reasonability standard.

Hawaii courts have long recognized that "[t]he application of an objective

'reasonable person' standard . . . is ordinarily for the trier of fact, rendering

summary judgment 'often inappropriate.'" *Courbat v. Dahana Ranch, Inc.*, 111

Hawai'i 254, 263, 141 P.3d 427, 436 (2006) (quoting *Amfac, Inc. v. Waikiki*

*Beachcomber Inv. Co.*, 74 Hawai'i 85, 107, 839 P.2d 10, 24 (1992)). In addition,

the Hawaii Supreme Court has held:

> Inasmuch as the term "reasonableness" is subject to differing
> interpretations, it is inherently ambiguous. Where ambiguity
> exists, summary judgment is usually inappropriate because the
> determination of someone's state of mind usually entails the
> drawing of factual inferences as to which reasonable minds
> might differ. Reasonableness can only constitute a question of
> law suitable for summary judgment "when the facts are
> undisputed and not fairly susceptible of divergent inferences
> because where, upon all the evidence, but one inference may
> reasonably be drawn, there is no issue for the [trier of fact]."
> "A question of interpretation is not left to the trier of fact where

26

evidence is so clear that no reasonable person would determine the issue in any way but one."

*Courbat*, 111 Hawai'i at 263, 141 P.3d at 436 (some citations, internal quotation marks, original bracket, and ellipses omitted); *see also Guajardo v. AIG Hawai'i Ins. Co., Inc.*, 118 Hawai'i 196, 206, 187 P.3d 580, 590 (2008); *Dannenberg v. County of Kauai*, No. SCAP-15-0000084, 2016 WL 6136998, at *18 (Haw. Oct. 21, 2016).

## 2.    **Whether Defendants' Actions Were Unreasonable Present Questions of Fact**

Based on the framework above, the Court addresses each of the contested actions in turn.

First, with respect to the AOAO initially withholding full approval of the Lawsons' renovation project subject to their signing the Modification/Indemnity Agreement attached to Chierek's May 7, 2015 letter, there are material issues of fact as to whether this demand was reasonable.  The Lawsons argue that the following terms, found on the second page of the Modification/Indemnity Agreement, were "patently unreasonable":

> The Owner hereby agrees to indemnify, defend and hold harmless the Association, its officers, directors, employees, agents, managing agent, members, attorneys, insureds and representatives from and against any and all demands, liabilities, losses, damages, claims, causes of action, expenses and charges, including but not limited to attorneys' fees, indirectly, by reasons of or in connection with such Modification.

Plfs.' Exh. 18 at 11.  The Lawsons also point out that the May 7, 2015 letter indicated that the terms of the Modification/Indemnity Agreement would be recorded in land court and bind all subsequent owners.  *Id.* at 10.

Defendants dispute that presenting the Lawsons with the Modification/Indemnity Agreement was unreasonable, arguing that "there is a contractual indemnity requirement for the type of work that the Renovation Project includes in the Governing Documents."  Dkt. No. 85 at 32 (citing Defs.' Exh. B (Declaration) at 22 ("In any event of a modification described above, each and every apartment owner shall indemnify and hold harmless . . . the Association against any and all claims that materials or workmanship of the property which are affected by such modifications are defective.")).  To the extent that the Lawsons disagreed with the form and content of the indemnity agreement provided, and believed it to be overbroad, Defendants argue that "questions of fact are automatically raised by such an assertion[.]"  Dkt. No. 85 at 32.  Defendants further argue that "Mr. Porter, whose firm has represented over 200 associations in the State of Hawaii, has submitted a declaration that the form of indemnity agreement provided to the Lawsons, among other owners, is consistent with industry standard practice in this case."  Dkt. No. 85 at 32-33.

The Court is unable to conclude, as a matter of law, that either Defendants' May 7, 2015 letter, or the Modification/Indemnity Agreement enclosed with that

letter, was patently unreasonable. Divergent inferences are present, and each is reasonable. For instance, reasonable minds could disagree over whether presenting the Lawsons with a broad indemnity provision was simply part of the negotiation process. That process ultimately concluded with the AOAO withdrawing the requirement that the Lawsons sign the Modification/Indemnity Agreement, and instead, allowing the renovation project to proceed with the indemnity language found in the Terms and Conditions of the Lawsons' Application. In the Court's view, the withdrawal of the demand does not necessarily lead to the conclusion that its initial presentment was unreasonable. Indeed, the withdrawal could also evidence the AOAO's appetite for discourse and willingness to negotiate.

Second, as to Defendants' enforcement of the Construction Period without granting the Lawsons an extension of time beyond November 1, 2015, there are material issues of fact as to whether the refusal to grant such an extension was unreasonable. In support of their position, the Lawsons rely heavily on Section 7.G(2) of the Declaration:

> All construction activity necessary to any such alteration shall be completed within four (4) months of the commencement thereof, subject to delay beyond the control of the apartment owner or his contractors . . ., in which case any such construction activity shall be completed in such additional time as may be reasonably necessary in the exercise of due diligence . . . .

Plfs.' Exh. 2 at 14.

29

The Lawsons argue that under this section, they were "entitled to an extension because the delay in construction was beyond the control of the Lawsons or their contractors." Dkt. No. 66-1 at 25.  No such "entitlement," however is evident from the text of Section 7.G(2).  In fact, as Defendants urge, it is not clear that Section 7.G(2) even applies to the extension of a Construction Period.  Dkt. No. 85 at 34.  Defendants further argue that the Lawsons were responsible for the delay, not the AOAO, because the Lawsons "refused to timely provide the performance bond and execute the form of the indemnity agreement provided, both of which are required by the Governing Document[s]." Dkt. No. 85 at 34-35.

The Court does not view the provision of the Declaration relied on by the Lawsons as conclusive of the matter.  To the contrary, reasonable minds could disagree as to whether the delay in construction was reasonable, who was at fault for the delay, and whether an extension into the Thanksgiving and Christmas time frame should have been granted.   Accordingly, the Court DENIES the Lawsons' motion for summary judgment as to Count V.[9]  *See Courbat*, 111 Hawai'i at 263, 141 P.3d at 436.

## B.   Count VI (Promissory Estoppel Against the AOAO, Chierek, and Lige)

---

[9]The Court finds it unnecessary to address Defendants' additional arguments relating to Count V.

Count VI asserts a claim for promissory estoppel against the AOAO, Chierek, and Lige.  Because the Court has already dismissed this claim against the AOAO, the Court focuses its analysis on Chierek and Lige.

Under Hawaii law, a promissory estoppel claim requires the following four elements:

> (1) there must be a promise; (2) the promisor must, at the time he or she made the promise, foresee that the promisee would rely upon the promise (foreseeability); (3) the promisee does in fact rely upon the promisor's promise; and (4) enforcement of the promise is necessary to avoid injustice.

*Shahata v. W Steak Waikiki, LLC*, 721 F. Supp. 2d 968, 981-82 (D. Haw. 2010) (citing *Gonsalves v. Nissan Motor Corp. in Hawaii, Ltd.*, 100 Hawaiʻi 149, 164-65, 58 P.3d 1196, 1211-12 (2001) (explaining that, under promissory estoppel, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise")).  For purposes of a promissory estoppel claim, a "promise" is defined as "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promise in understanding that a commitment has been made." *Gonsalves*, 100 Hawaiʻi at 165, 58 P.3d at 1212.

As the basis of their promissory estoppel claim, the Lawsons point to the following March 27, 2015 email sent by Chierek:

31

> The building committee has approved the demo and start of
> your project next week on April 1.  They are looking forward to
> providing the final complete approval of the project once
> structural modification items have been satisfied and further
> reviewed.

Plfs.' Exh. 11.

Defendants argue that there is no promise contained in the foregoing email,

and that the email must be read in the context within which it was sent.  That is,

Defendants argue that Conners' March 26, 2015 email clarifies the purpose of the

initial demolition: "As we discussed on Monday, it would be best if demolition at

units 101 and 1404 (except for structural) be completed to allow better assessment

of the proposed modifications."  Defs.' Exh. L.  Relatedly, Defendants also point

to BPG's March 31, 2015 email to Conners,[10] which they argue further clarifies the

scope of the approval:

> I agree that the issues noted in our plan review can all be
> resolved and have no objection to the demolition work to
> expose existing structure to be started with, but will point out
> that BPG is not the party to issue an official project approval or
> NTP.
> . . .
> [Chierek], please feel free to respond and confirm or correct my
> assumptions regarding the plan approval procedure.  I believe
> your idea to approve work consistent with a Tier 2 project is a
> clear and simple way to get the work started without risk to the
> AOAO or the property.

---

[10]The Lawsons and Chierek were also copied on this email.

Defs' Exh. N.  In other words, Defendants argue that the preliminary approval was limited to demolition work to allow BPG to better assess the Lawsons' proposed modifications.

The Court finds that divergent inferences can be drawn based on the evidence presented.  In other words, there are triable issues of fact concerning whether the March 27, 2015 email constituted a promise upon which the Lawsons were entitled to rely, whether Defendants should have reasonably expected to induce such reliance, and whether justice requires the enforcement of the alleged March 27, 2015 promise.  One reasonable interpretation is that none of these documents evidence the AOAO's promise to ever provide a final approval for the Lawsons' renovation project.  Accordingly, the Court DENIES the Lawsons' motion for summary judgment as to Count VI.

## **CONCLUSION**

Based on the foregoing, the Court GRANTS in part and DENIES in part Defendants' Motion for [FRCP] 12(b)(1) Dismissal and for Judgment on the Pleadings (Dkt. No. 69) and DENIES the Lawsons' Motion for Partial Summary Judgment (Dkt. No. 66).

IT IS SO ORDERED.

DATED:  December 30, 2016 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

Lawson v. Association of Apartment Owners of Wailea Point, et al.; CV 15-00449
DKW-KSC; **ORDER: (1) GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR FRCP 12(b)(1) DISMISSAL AND FOR
JUDGMENT ON THE PLEADINGS; AND (2) DENYING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**